(38 App. Div. 284.)

### BORLAND v. WELCH.

(Supreme Court, Appellate Division, First Department.   March 24, 1899.)

MARRIAGE SETTLEMENT—CONSTRUCTION.

Property of which S. became possessed after the death of C. is not covered by a contract in the nature of a marriage settlement between S., party of the first part, and C., party of the second part, and trustees, parties of the third part; reciting the contemplated marriage of S. and C., and that S. would four years thereafter be entitled, under the will of L., to a legacy, and that it was agreed between them that all her private fortune should be settled, conveyed, limited, and appointed in the manner thereinafter expressed, and agreeing that in contemplation of said marriage, and in consideration of the uses, trusts, and purposes expressed in the paper, S. conveyed to the trustees all her private fortune derived from said will, "or which she may at any time or times hereafter derive * * * from any source or * * * person * * * whatsoever or whomsoever, other than C., in trust to pay the income to S.," and for certain other purposes; and containing an agreement that C. and his heirs, executors, or administrators should do whatever was necessary to vest in the trustees the property to be derived under the will of L., "and so in like manner in regard to every accession of fortune which may accrue to the said party of the first part in her lifetime"; and providing that S. might dispose of the property by will, provided that the will should be in favor of the issue of said marriage, or any subsequent of S., and authorizing advancements to any issue of said marriage, or any subsequent marriage of S.; there being, except for the inference arising from such provisions for issue of any subsequent marriage, no direction to the trustees as to disposition of the income or use of any property after her marriage to C. should come to an end by his death.

Ingraham, J., dissenting.

Appeal from judgment on report of referee.

Action by M. Woolsey Borland, as sole surviving trustee of Sarah Lloyd Coit, under a certain trust agreement, against Francis C. Welch, executor of Sarah Lloyd Coit, deceased.   From a judgment for plaintiff, defendant appeals.   Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Edward E. Sprague, for appellant.
John L. Cadwalader, for respondent.

RUMSEY, J.   On the 3d of November, 1838, Miss Sarah Lloyd Borland, as party of the first part, entered into a contract with Henry Coit, of the second part, and John Borland and George Sprague, of the third part, in the nature of a marriage settlement; the occasion being the anticipated marriage between Miss Borland and Mr. Coit, and the object of the settlement being to transfer to the parties of the third part, as trustees, all the property of Miss Borland, to hold for her benefit.   The marriage took place, and the parties continued to live together as husband and wife until 1880, when Mr. Coit died. In 1896 Mrs. Coit received by will the sum of $20,000, which she delivered to certain persons for investment on her account.   It was invested, and so continued until her death, in 1898.   She left a will, by which she appointed the defendant as executor, and he qualified in that capacity.   As such executor, he claims to be entitled to the

proceeds of the investment of the $20,000 which Mrs. Coit received in 1896. The plaintiff, as trustee under the marriage settlement, also claims to be entitled to the same money; and he has brought this action to obtain a judgment that the defendant, as executor of Mrs. Coit, be directed to transfer the property to him, and be restrained from taking it into possession, or making any claim upon it. Issue was joined in the action, and upon a trial before a referee it was decided that the plaintiff was entitled to the relief demanded; and judgment to that effect was accordingly entered, from which this appeal is taken.

The marriage settlement in question recites that a marriage was expected to be solemnized between Miss Borland and Mr. Coit, and that Miss Borland, being then of the age of 21 years, would become entitled, under the will of her grandfather, James Lloyd, to receive, when she reached the age of 25 years, a certain legacy, which seems to have been a considerable sum of money. . The settlement then recites that it was distinctly agreed and understood between Miss Borland and Mr. Coit that all her private fortune, from whatever source derived, should be settled, conveyed, limited, and appointed in the manner thereafter expressed in the settlement. After these recitals, it was agreed that in contemplation of the said intended marriage, and in consideration of the uses, trusts, and purposes expressed in the paper, and other considerations therein recited, the party of the first part (Miss Borland), with the full knowledge and consent of the party of the second part (Mr. Coit), conveyed to the parties of the third part, and their heirs and executors, "all and singular, the private fortune, property, and estate, whatsoever and wheresoever, both real and personal, of her, the said party of the first part, as derived or to be derived from the last will and testament and codicil of the said James Lloyd, deceased, or which she may at any time or times hereafter derive, either by bequest, devise, descent, distribution, gift, or otherwise howsoever, from any source or sources, person or persons, whatsoever or whomsoever, other than the party of the second part," in trust to pay the income to Mrs. Coit, and for certain other purposes more particularly expressed in the instrument, and to which it is not now necessary especially to refer. The instrument is a very long one, and contains particular directions as to the conduct of the trust, the manner of payment of the income, and regulating the powers of the trustees, and, among other things, an agreement on the part of the intended husband that he will do whatever may be necessary in order to vest the said trust property, or any part thereof, in the trustees, and especially agreeing that, when Miss Borland shall have attained the age of 25 years, he will do everything necessary to settle and appoint the fortune and estate to which she will then become entitled, in the trustees, "and so in like manner in regard to every accession of fortune which may accrue to the said party of the first part in her lifetime." The plaintiff claims that the true construction of this instrument is not only to transfer to the trustees all the estate of which Miss Borland might be possessed at the time of the solemnization of the marriage, and all of which she might become possessed during her coverture, but, in addition, all other property of which she

might become the owner at any time after the death of her husband, except what she might receive from him, and, as the legacy of $20,000 was not received from him, that it passed to the plaintiff, as trustee, by virtue of the marriage settlement thus construed. The defendant, on the contrary, insists that the true construction of the instrument is to give to the trustees only such property as Miss Borland might own at the time of the marriage, and such other property as she might become the owner of during her married life, and that no property which she might become possessed of after the death of her husband was intended to pass, or did pass, by the instrument. The referee adopted the first construction of the instrument, and the question is whether his conclusion was correct.

We have not found it necessary to consider to what extent the instrument in question shall be said to be void at law as to after-acquired property of Mrs. Coit, or the conditions which must exist before a court of equity will determine that such property shall vest in the trustee; for we assume that if, by the true construction of the instrument, it was intended that property acquired after the coverture shall pass, a court of equity will find no difficulty in carrying into effect that intention of the parties. The single question, therefore, which we have considered, is whether, by the true construction of the instrument, such after-acquired property passes.

At the time that the instrument was made, the rule of law, as is well known, was that, immediately upon the solemnization of the marriage, there passed to the husband the absolute title to every particle of the personal estate which she might own, subject only to the condition that he should reduce it to possession while the marriage existed. He had also an estate for life in her real estate, and the possession and control of it, and the right to receive the rents and profits during the marriage, with certain rights afterwards, which it is not necessary to consider. 2 Kent, Comm. 130 et seq. After the death of the husband, if the wife survived him, the personal property did not vest again in the widow, but it went as property of the husband, either in accordance with his will, or to his next of kin, to the exclusion of the next of kin of the wife. This condition of affairs existed so long as the marriage lasted, but, of course, whatever property might come to the wife after the death of her husband belonged to her personally, as though she were single. It was in view of this condition of the law that this marriage settlement was made,— for the purpose, as stated in it, that all the private fortune of the intended wife should be limited and appointed to the trustees, for her benefit, in the manner prescribed in the settlement, and for those purposes, the effect of which was to take it out of the power of the husband, and devote the income solely to the wife, and give her the right to dispose of it by will. To attain these objects, it was necessary only that the trustees should receive the title to that property which might come to the wife during the existence of the marriage. Upon an examination of the paper, we find that the active duties of the trustees with regard to the disposition of the income, so far as the wife is concerned, are limited to the said marriage. They are to hold the property for the separate use and benefit of Mrs. Coit for and dur-

ing the said marriage, and to pay over to her the income there-from. They are to permit her, during the said marriage, to use and enjoy all household furniture and personal property which she may have received during that time. They are to permit her and the party of the second part, during the said marriage, to occupy free of rent any residence which shall be given to her or which shall have been purchased for her by any person except her husband. The instrument contains no directions to the trustees as to the dispo-sition of the income, or the use of any property which shall have vested in them under it, after the marriage shall have come to an end by the death of Mr. Coit, if any such thing shall happen, except that it makes certain provisions for the issue of any subsequent marriage, from which it may fairly be inferred that it was not the intention of the parties to the instrument that the estate of the trustees should cease, if Mrs. Coit should become a widow, but should continue in view of the possibility of her contracting a subsequent marriage, in which case the existence of their title would prevent the vesting of the property in the second husband. Except for the inference arising from that provision, it would be almost conclusively presumed that as, in case of the dissolution of the marriage by the death of the hus-band, no duties remained to be performed by trustees, their estate would come to an end, as was held to be the law in Hepburn's Appeal, 65 Pa. St. 468. While, therefore, we cannot accept that case as au-thority for the conclusion that the trust was determined by the death of the husband, yet what is said in it as to the object for which the instrument was created may fairly be considered as bearing upon the intention of the parties, which is to be ascertained in its construction. The important consideration is that the instrument was made to pro-tect the interest of the wife during the time while, because she was a wife, the law took away all her right to control her personal property during her life or to dispose of it at her death, and that for that pur-pose only was it necessary that this trust estate should be created. This object is accomplished by restricting the words used to such estate as she should acquire during her coverture; and it is not neces-sary to give the instrument any more extensive meaning, to carry into effect the intention of the parties. In view of that object, which is always understood in marriage settlements, and which is practically avowed in this settlement, it has come to be a rule of law that words of conveyance or transfer of after-acquired property of the wife must, in the absence of words showing a contrary intention, be read as though the words "during the coverture" had been inserted in the in-strument. Such is the well-settled law of England. In re Edwards, 9 Ch. App. 97; In re Campbell's Policies, 6 Ch. Div. 686; Howell v. Howell, 4 Law J. Ch. (N. S.) 242; Reid v. Kenrick, 24 Law J. Ch. 503. The cases of Dickinson v. Dillwyn, L. R. 8 Eq. 546, and Carter v. Carter, Id. 551, recognize the rule; and there is but one case, so far as the books show, in England, in which the contrary rule has been adopted. That is Stevens v. Van Voorst, 17 Beav. 305; and that case is expressly overruled in the two cases first above cited. So far as there is any authority on this subject in this country, the same interpretation has been given to those instruments. Steinberger's

57 N.Y.S.—3

Trustees v. Potter, 18 N. J. Eq. 452. In view of these decisions, and the undoubted fact that the intention of the parties, to be drawn from the instrument in question, is carried out by limiting the transfer of the wife's property to that which shall be acquired by her during the coverture, we feel bound to construe the instrument as ineffectual to transfer property acquired by her after the coverture; and for that reason to reverse the judgment entered upon the decision of the learned referee, with costs.

As the decision is a short one, and there can be no question about the facts, we are at liberty, under section 1022 of the Code, to direct a proper judgment to be entered; and judgment therefore must be reversed, with costs, and judgment entered dismissing the complaint, with costs. All concur, except INGRAHAM, J., dissenting.

INGRAHAM, J. (dissenting). A careful study of the marriage settlement under which the question presented in this case arises has brought me to a different conclusion from that of a majority of the court. There seems to be no dispute that, where an instrument assumes to transfer property thereafter to be acquired, it is ineffectual as a grant to pass the legal title, but a court of equity will construe the instrument as operating by way of present contract to give a lien, which, as between the parties, takes effect, and attaches to the subject of it, as soon as it comes into the ownership of the party, and will enforce that lien by decreeing a conveyance of the property when that lien attaches. Kribbs v. Alford, 120 N. Y. 524, 24 N. E. 811. By this marriage settlement the party of the first part, in terms, transferred, all and singular, her private fortune, property, and estate "which she may at any time or times hereafter derive, either by bequest, devise, descent, distribution, gift, or otherwise, from any source or sources, person or persons, whatsoever or whomsoever, other than the said party of the second part, whether the same be now in possession, reversion, remainder, contingency, expectancy, or otherwise howsoever." This grant or transfer being, in equity, a covenant to give a lien, which, as between the parties, attached to the subject of it as soon as it came into the ownership of the covenantor, the only question to be determined is whether, by the instrument itself, the parties intended that the property which accrued to the party of the first part to the agreement at any time during her life was included within this grant. Much stress is laid in the prevailing opinion upon the object of this instrument, and it is assumed that its object was to transfer to the trustees all the property belonging to Miss Borland, to be held for her benefit; "that the instrument was made to protect the interest of the wife during the time while, because she was a wife, the law took away all her right to control her personal property during her life, or to dispose of it at her death; and for that purpose only was it necessary that this trust estate should be created." I think the instrument itself shows that it was the intention of the parties to accomplish something more than this by the execution of the instrument. Upon the marriage of the parties, the husband would be entitled to all the personal property of the wife, to which she became entitled

during coverture. He relinquished that right, which was substantial, as it appears from the instrument itself that Miss Borland would be entitled, upon arriving at the age of 25 years, to a legacy from her grandfather. In the absence of such a settlement Mr. Coit would have had the right to dispose of the property belonging to his wife, or to which she should subsequently become entitled during coverture, by making provision for his children or others, without regard to his wife's wishes, and to place any such property absolutely beyond her control. This right he relinquished; and such relinquishment was an ample consideration for any promise or agreement which the wife should make as to the disposition that should be made of property which should accrue to her, or to which she should at any time become entitled. An agreement by her to dispose of the property to which she became entitled after the death of her proposed husband, as well as before, would be enforceable in equity, and would be binding upon her. If, therefore, the marriage settlement clearly and in express terms evidences the intention of the parties that all the property to which Miss Borland should become entitled during her life, whether during coverture or after it had ceased, should be disposed of under the marriage settlement, it seems to me that it is the duty of a court of equity to enforce such agreement; and in my opinion this intention is clearly expressed in the instrument itself. This principle is sustained by the English authorities. In Dickinson v. Dillwyn, L. R. 8 Eq. 546, where the covenant in a marriage settlement applied expressly to any property which the wife, or her husband in her right, should become entitled to under the will or intestacy of, or by gift from, her father, the vice chancellor held that a legacy from the wife's father, to which she became entitled after the coverture had ceased, was bound by the terms of the instrument. It seems to be settled, however, and I assume the rule to be, as stated by Lord Justice James (In re Edwards, 9 Ch. App. 97), that such a covenant, prima facie, "is to be supposed not to be intended to apply to property, the wife's title to which does not accrue until after the husband's death"; "that, in the absence of any expressions showing that a covenant of this nature was intended to have a more extended operation, it is to be construed as if the usual words, 'during the said intended coverture,' had been inserted." It is therefore necessary to find in this marriage settlement an intention that the covenant as to future-acquired property should have a more extended operation than if the words "during the said intended coverture" had been inserted.

In the first place, it seems to me that some effect should be given to the omission of these "usual words," especially in an instrument of this character, which shows upon its face that it was prepared by an experienced draftsman, and which contains most careful provisions for carrying into effect the intention of the parties. The recital in the instrument expressly states the agreement which had been arrived at between the parties to the proposed marriage. It is there stated that:

"Whereas, upon the treaty for the said marriage between the said parties of the second and first parts, it was distinctly agreed and understood that, all

and singular, the private fortune of the said party of the first part [the wife], whether derived, or to be at any time or times hereafter derived, from or under the will or codicil, in part above recited, of the said testator, or from any other source or sources whatsoever, and whether now in possession, remainder, reversion, contingency, expectancy, or otherwise howsoever, should, before the solemnization of the said marriage, be vested, settled, arranged, conveyed, limited, and appointed in the manner or to the effect hereinafter expressed and contained."

Thus the parties had agreed that all the private fortune of the wife, derived from any source or sources whatsoever, and whether then in possession or otherwise, should not be held for the benefit of the wife during coverture, but should be vested, settled, arranged, conveyed, limited, and appointed in the manner or to the effect provided for by the settlement. It was the private fortune of the wife, whenever received by her, that was to be settled and disposed of under the terms of this agreement; and this private fortune of the wife was to be the private fortune which she was then entitled to, or which she was to become entitled to at any subsequent period. The instrument then conveyed all property that the wife then had, or to which at any subsequent time she should become entitled, "or which she may at any time or times hereafter derive, either by bequest, devise, descent, distribution, gift, or otherwise howsoever, from any source or sources, person or persons, whatsoever or whomsoever, other than the said party of the second part [the husband], whether the same be now in possession, reversion, remainder, contingency, expectancy, or otherwise howsoever." No words could have been chosen, it seems to me, which would more strongly express the intention of the parties to include within this marriage settlement all of the property to which the wife should at any time during her life become entitled, without relation to the continuance of the coverture. And the subsequent provisions of this instrument show that such was the intention. The intended husband did, as before stated, by the instrument, resign all power to make any disposition of this property to his own children; but the instrument provided that, if children should result from the marriage then contemplated, those children should be entitled to a portion of the property to which the wife should become entitled, and which should come under the provisions of this settlement. For by the subsequent terms of the agreement it was provided that the wife should have power and authority at any time during such marriage, and notwithstanding the same, to make and execute her last will and testament, or an appointment in the nature of a last will and testament, in the same manner, and with the like effect, as if she were unmarried, "provided, further, that such will and appointment be made and executed in favor of the issue of said marriage, or any subsequent marriage, of the said party of the first part," and that she should have "full power and authority to bequeath or appoint the said trust premises to and among her said issue in such unequal or equal shares and portions as she may deem proper, in regard to any or either of her descendants." Thus, it was expressly understood that this trust should continue beyond the period of the coverture, and that the wife should have the power to bequeath or ap-

point the property held in trust under the instrument among her issue; thus assuring to the children of the husband all of the trust property, except upon the contingency of the wife's marrying again, and having children by the subsequent marriage. But even in that event his children were to have a portion of the property to which the wife should become entitled. There is nothing to show that this was intended to be limited to the property to which the wife should become entitled during the coverture, but, on the contrary, the language is so broad as to include all property which she ever should become entitled to. Her husband thus secured to his children the right to the property which should accrue to the wife at any time during her life. The agreement also contains a covenant that the husband, and his heirs, executors, or administrators, "shall and will at any time or times hereafter make, do, or execute every or any lawful act, deed, matter, or thing which may be reasonably required of him in order the more effectually to vest the said trust premises, or any part thereof, in the said party of the third part, in trust for the said party of the first part, or to carry these presents into full and complete effect according to the true intent and meaning thereof; and especially, when the said party of the first part shall have attained her age of twenty-five years, he will then execute and perform any and every lawful act, deed, matter, or thing which may be reasonably required of him in order to settle, limit, and appoint, according to the true intent and meaning of these presents, the fortune and estate which the said party of the first part will in that event become entitled to under the said will and in part recited first codicil of the said James Lloyd, deceased; and so in like manner in regard to every accession of fortune which may accrue to the said party of the first part during her lifetime." Here was a distinct recognition of the fact that the fortune of the party of the first part, which was to pass under this marriage settlement, was to be the fortune that should accrue to the party of the first part during her lifetime; and her husband, and his representatives after his decease, covenanted that, as to such fortune, they would join in all instruments necessary to assure that such further-acquired property, acquired by the wife during her lifetime, should vest in the trustees, and thus become a part of the trust estate.

There is another provision of this instrument which I think is suggestive, and that is the one which authorizes advances by way of outfit to any one or more of the issue of the party of the first part, either by the said contemplated marriage or any subsequent marriage, thus clearly recognizing the necessity of this provision,—as, all of the property of the wife coming under the provisions of the trust, she would have no property of any kind to dispose of for an advancement to her children under the proposed or subsequent marriage. The provision of the instrument immediately succeeding provides for the payment of the income of the trust fund to the party of the first part (the wife), and that is not limited at all during coverture, but is to continue during her life. In every clause in this marriage settlement where the property of the wife is mentioned, it is spoken of as all the property which is at any time to accrue to her, and I cannot see

how it could be more strongly and clearly expressed.    For these reasons, in addition to those stated by the referee in his opinion, I think the judgment was right.